

# THE UNITED STATES COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Richard M. Farina and his wife<br>Linda Farina *Real Property Owners*<br>3125 Lost Creek Drive<br>Cantonment, Florida 32533<br>**Plaintiffs**<br><br>*vs.*<br><br>Federal Housing Finance Agency<br>400 7th St SW Washington, DC 20024<br>*&*<br><br>BAC Home Loans Servicing, LP<br>6400 Legacy Drive Plano, TX 75024<br>*&*<br><br>Bank of America, N.A.<br>100 N. Tryon Street, Charlotte, NC 28255<br>**Defendants** | case no:<br>3:19CV1021 JCH<br><br>EQUITY OF REDEMPTION<br><br>QUIET TITLE<br><br>EQUITABLE RECOUPMENT<br><br>CT FDCPA VIOLATIONS<br><br>FDCPA VIOLATIONS<br><br>BREACH OF CONTRACT<br><br>BREACH OF WARRANTY<br><br>UNJUST ENRICHMENT<br><br>TILA VIOLATIONS<br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT TO QUIET TITLE AND FOR OTHER RELIEF

**COMES NOW,** Richard Farina and his wife Linda Farina, seeking relief in the nature of "Quiet Title", ASSERTING THE Equity of Redemption against a mortgage claim, and for related Damages *&* other claims, to wit:

1

## Federal Question Jurisdiction

Federal jurisdiction overwhelmingly precludes State jurisdiction here: *"federal interest in this matter is so dominant that the federal system will be presumed to preclude the enforcement of state laws on the same subject." **Fidelity Federal Savings and Loan Assn v. de la Cuesta,*** 458 U.S. 141, 153 (1982). Jurisdiction of the United States District Court is not a matter of speculation, but rather of absolute constitutional certainty. This case as a matter of law originates in the District Court over the federally mandated controls for mortgage securities and banking, besides the constitutional equities relating to the massive socialization of "real property" especially in the nature of "residential housing", rather than the pretext of a limited state action for "trustee sale purchasers".

The underlying mortgage is directly backed by the Federal Government, being a consumer financial product generated and insured through the practice and policy and procedure of federal mortgage underwriting standards and literally in receivership of the **Federal Housing Finance Agency**. The "mortgage claim" was securitized and placed into tranches of "Mortgage Backed Securities" ("MBS") and covered under the FDIC "fair valuation" policy which means every dollar of value "REO" is a dollar in hand, besides the related "80% Loss Sharing Program", eliminating the possibility of financial risk. As a financial matter alone, there is sufficient federal jurisdiction in the related securities and banking regulations, regulations which are habitually violated concerning federally chartered banks and the financialization of mortgage backed securities, which are universally underwritten by "Fannie Mae" or "Freddie Mac". Both of these **federal** corporations are held by the **FHFA** since 2008. Jurisdiction therefore exists under the 1934 Security Exchange Act Sec. 20(b) 15 USC §77T: Injunctions and Prosecution of Offenses, and where there is question of federal underwriting and banking laws, and because the "FHFA" is an indispensable federal party to the case.

2

Additionally, it is evident that the plaintiffs reside in Connecticut, while all the defendants are diverse that political jurisdiction. The district court has exclusive jurisdiction over title claims presented by the plaintiff as evolved from the real parties' interest under federal banking and securities law and in light of other constitutionally protected civil rights. Under Article III of the Constitution, federal courts can hear 'all cases, in law and equity, arising under this Constitution, [and] the laws of the United States…" Art. III Sec 2. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient. *Osborn v. Bank of the United States,* 9 Wheat. (22 U.S.) 738 (1824).

Interstate banking activities are under the exclusive jurisdiction of the federal district court as it regards clear and consistent restructuring guidelines for the entire mortgage industry especially relating to homeowners, and federal laws regulating the concomitant federally underwritten securitization and banking practices. The really interested parties were never established nor are there clear titles to the "foreclosure deed". Neither does this deed convey possessory rights in writing or by later judicial determination. Since the named defendants here refuse to proceed in the ordinary course of "Quiet Title" or even "Ejectment", the Plaintiffs' must have a remedy in the federal court to protect elementary due process and substantive rights guaranteed against the States under the 14th amendment, and against the federal government too, along with its agencies and instrumentalities.

## PARTIES

1. The Plaintiffs are captioned above "Richard Farina" and joined by his wife "Linda Farina" as real property owners or tenants in fee simple, and by their joint immediate stewardship of the premises at 100 Town Line Road, Plainville Connecticut, a single family home.

2.      The captioned Plaintiffs now own the said real property at 100 Town Line Road, Plainville, Connecticut having maintained ownership since June 1996. See exhibit "A" attached, being their record deed for the subject premises.

3.      The **Federal Housing Finance Agency** is named additional defendant, located at 400 7th St SW, Washington, DC 20024 *ex rel* "Fannie Mae" or "Freddie Mac" as bankruptcy receiver and *trustee ad litem.* This is an agency of the federal government and it is holding **both** the "Federal National Mortgage Association" **and** the "Federal Home Loan Corporation" in **receivership** since 2008, by regulation from the U. S. Treasury Dept.

4.      While these "twins" 'Fannie Mae' and 'Freddie Mac' are being held in receivership by the **United States Government**, this makes for both a "Federal Question" and a "Government Party".

5.      BAC Home Loans Servicing, LP, founded in 2001, operates as a subsidiary of Bank of America, National Association and has its main offices in Plano, Texas. Bank of America, N.A.is a multinational investment bank and financial services company based in Charlotte, North Carolina.


VENUE

6.      The subject premises at 100 Town Line Road are located in Plainville Connecticut, and this address in Hartford County Connecticut has been the object of every related injury and damage to the plaintiffs, besides the related "foreclosure sale".

7.      The primary activity related in this case has always been in the State of Connecticut, specifically in the Hartford County state judicial circuit. Additionally, the "Hartford County Recorder of Deeds", or the local 'land records' office is also located in Connecticut.

## COUNT ONE: ACTION TO QUIET TITLE AGAINST ALL DEFENDANTS

8.      The defendants' singular & all cannot show they owned or held the mortgage note. It is impossible that any of these defendants owned or held any rights within the legal and actual mortgage deed or mortgage obligations.

9.      The ONLY valid holder of the subject note was the loan originator, People's Bank, and it sold away its claim on September 15, 2003, and therefore was not a party to the foreclosure action against the plaintiffs.

10.     After People's Bank, the Chain of Title was broken because there is no further assignment.  The mortgage note was a non-negotiable contract for many years of monthly payments, and the critical language is always the same: the Borrower shall pay to the Order of the Lender or its assigns".

11.     The plain covenant on the standard "Fannie Mae" residential mortgage note is unenforceable and impossible to perform as written. The Lender never presents his Order to the Borrower, there is no "place of payment", and the Borrower never refuses or dishonors the Order of the Lender.

12.     The language employed is designed to give an appearance of "negotiability", but a standard residential lending contract is an easily reproduced, loose-leaf sheaf of boilerplate 'paperwork'. This standard "mortgage note" is not 'negotiable', it cannot circulate in the form of the paperwork itself, and the mortgage debt does not 'merge' with the 48-100 corners of the document.

13.     Fannie Mae and Freddie Mac do not underwrite "residential demand notes" or "home equity crop liens". It cannot be "cashed" or "deposited", the mortgage note here is not a check, draft or demand instrument. If it was, the holder always fails at every time to exercise a plain remedy by "presentment" of the "negotiable mortgage note" as under U.C.C. 3-501.

14.     There are an endless array of extra provisions scattered throughout the many different pages of the mortgage loan contract, and it requires the confident participation of a "3rd party servicer" to even account for what is due and owing on the mortgage relationship. The relationship itself is a fetter on the equity of redemption, and the mortgage is designed to fail by making reliable payment and good title for payment impossible. It cannot be redeemed as it is written.

WHEREFORE, it is demanded against ALL DEFENDANTS to prove their claim and interest in the "mortgage debt", or the related state court "foreclosure proceedings". Let this Court sit as Chancellor and determine who exactly has what rights, obligations, duties and options within the "securitization trust" arrangement as it relates to the plaintiffs' title interest in the "subject premises" at 100 Town Line Road, Plainville, Connecticut.

## COUNT TWO: ACTION TO ASSERT THE EQUITY OF REDEMPTION

15.     The Plaintiffs above assert their constitutional right to the equity of redemption and all related "foreclosure jurisprudence", which is a substantive procedural guarantee. As stated above, the equity of redemption was clogged up by the impossible terms of defeasance written into the mortgage instruments.

16.     On information and belief, the related "mortgage debt" was already "paid" by various "credit default swaps", and the related federal government insurance. The defendant Federal Housing Finance Agency (located in Washington D.C.) is the appointed receiver for the federally related underwriting corporation, either "Fannie Mae" or "Freddie Mac". The "non-negotiable mortgage debt" opened by U.C.C. 3-303 "front page indorsements" is evidence that the mortgage credit was hypothecated into fungible credit, still traded on the financial markets.

17.     To the extent that the "non-negotiable mortgage debt" is treated as a "negotiable commodity", the unknown 'holder (or any of the named defendants) plainly failed to exhaust an available remedy by "presenting the note for payment" at the "place of payment", governed under U.C.C. 3-501 "Presentment and Dishonor". The note is still in circulation, yet they spent the credit at sale.

18.     The evident "mortgage paperwork" is front page endorsed in BLANK without any sign of distress or marking the instrument out of circulation, such that is was ever "refused", "dishonored", "paid" or "cancelled".

19.     With this dizzying array of mutual credit arrangements, collateral, subsidiary and underlying insurance guarantees, and the "negotiability" of residential mortgage debts, there was a hopelessly fettering 'clog' on the mortgagors' equity of redemption in the plaintiffs "Richard and Linda Farina, 3125 Lost Creek Drive, Cantonment, Florida 32533."

20.     It was impossible to know whom to pay with any certainty, how much was 'covered' and how much was 'floating', and this collateral interference fettered the plaintiffs' right to redeem the mortgage pledge. The multiplicity of parties and paperwork makes it impossible for the average consumer.

21.     This was the intentional program of the defendants who are running a "foreclosure mill scam", maintaining a serial champertous litigation fraud in aid of their designs. It is a federally underwritten and held practice, a nationally mandated subsidy under the several Acts of Congress and through the operations of 'FDIC', which guarantees everything, and stimulates the moral hazard to where "the more losses, the greater return" for the game players.

22.     With the stipulation of disloyal and malfeasant third party servicing in defendant "BAC Home Loans" and "tandem" illegal foreclosure processing by their law firm, it became impossible to rationally or safely redeem this mortgage, refinance the mortgage, or obtain a buyer for the property.

23.     All related defendants whether in subsidy, policy, or conduct made every effort to render foreclosure inevitable and unavoidable, and it is a matter of federal policy to promote this regime by public subsidy and regulations.

24.     Treating any "federally related home mortgage claim" as a "negotiable instrument" impermissibly fetters the equity of redemption by making it impossible to know who to pay, how to summon their attention, or where to redeem this "mortgage". See for example, *Veal v. Am. Home Mortg. Servicing Inc., (In re Veal)*, 450 B.R. 897 (9th Cir. BAP 2011):

25.     "[T]he rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. U.C.C. § 3–602 (a), (c)."

26.     "By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay). Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." Veal, supra.

27.     "Or, to put this statement in the context of this case, the [borrowers] should not care who actually owns the Note— and it is thus irrelevant whether the Note has been fractionalized or securitized— so long as they do know who they should pay." Veal, supra.

28.     Because the 'holder' of a "negotiable mortgage note" never presents it for payment, and as it remains in circulation without presentment, the plaintiff here never knows whom to pay, or how to make this payment, or that paying for the "mortgage debt" will release the circulating instrument.

29.     It is plainly denied without further excuse that no federally related home mortgagor ever "makes" or "draws" a "mortgage note". To financialize the common law mortgage bond for many years of monthly installment payments into a schizophrenic "negotiable specialty instrument" creates an egregiously inequitable fetter on the possibility of redeeming the mortgage pledge at will.

30.     The mortgagor has no idea whom to pay in this scenario and the mortgagee denies responsibility. BAC Home Loans Servicing, LP in every capacity was unaccountable for the payment or the demand to pay and could not comply with FDCPA regulations. Let the defendants rebut or answer this claim.

31.     It was an egregious clog on the equity of redemption to require treating with a third party "servicer" who is also maliciously incompetent and willfully malfeasant, with a view towards forcing the foreclosure of this "mortgage ", which is not really a mortgage at all. Instead it is really an indefeasible equity deed granted to a larger real estate stock securitization trust.

32.     Stipulating to the presence of any interfering party that will prevent redemption is an unconscionable fetter if the Court will view the unverified arrangement as a traditional 'mortgage' given to secure a loan.

33.     Stipulating to the monetary financialization of the payment schedule ("monetization") is an egregious and burdensome fetter that makes redemption nearly impossible, and turns the mortgagor into a 'banker' awaiting a 'presentment' that never happens, and cannot happen, upon an instrument that is not negotiable and could not serve that purpose even if it was forced to it.

34.     There is no place for redemption on a negotiable instrument (only "exchange of payment") and therefore no room to foreclose the equity of that redemption, nor adequate procedure available. Nobody is going to "present a mortgage note" to either the Plaintiffs or anyone else, although they might discharge the debt.

35.     The "third party underwriting guarantee" must first be discharged out of the mortgage arrangement and "pass the buck" to whomever is the real party interested. Imposing the "securitization" of the mortgage debt and the underlying deed renders the concept of "default" superfluous and obsolete.

36.     The 'equitable' or incipient interest of "holding the note" (even if it was 'negotiable' and actually related to the underlying 'mortgage') is no standing to sue or a claim for relief. In any action or cause of whatever nature, the "circulating promissory value" must be first 'restricted' then cancelled: marked "void", "refused", or "dishonored".

37.     The mortgage stock was an equity collateralized in support of an extended financial arrangement, traded daily and supported by federal subsidies along with other underwriting guarantees. Therefore, the demurrer of plainly evident *laches, waiver and estoppel* is asserted in due course. Anybody who took these "instruments" did so subject to all "defenses and set offs", counterclaims and other risks. They have had every opportunity to pursue a different course.

38.     The property value at just **$155,330** after public assessment by Hartford County easily supported the mortgage claim at the "law day" imposed by the State court in the related foreclosure action, which was arbitrarily reduced to around $115,000.00 in docket no. **CV-09-5013674-S** in New Britain Superior Court.  The foreclosure action made a "fraudulent conveyance" if it will bar the equity of redemption, unconstitutionally depriving the owner of some $40,000 in equity.

39.     At the same time, multiples of potential "unsecured" debt over real equity rendered defeasance economically impossible, serving only to 'clog' or 'fetter' the inhering mortgagor's equity of redemption. "Once a mortgage, always a mortgage" goes the saying.

40.    It was not meant to be a slow motion indefeasible sale. The property is now (three years later) easily "underwater", which is just fine if the mortgage stock is an equity position, but an illegal clog that should have clear by the action of foreclosure itself.

41.    By foisting massively unsecured debt over the right of defeasance in the mortgage security, it may be reasonably inferred to accrue on a predatory lending scheme, underwritten by fraudulent appraisal standards. The mortgage was fettered by an illegal 'collateral' stipulation that anything other than the mortgage pledge must be redeemed.

42.    On the other hand, clogging redemption by the infinite potential account of the mortgage loan is an efficiency in the business model; to foreclose without clearing the equity is an unconstitutional burden on the inhering equity of redemption itself. The plaintiff was deprived of his recoupment in the transaction, foreclosure was at odds with the premise of the contract and the financial environment.

43.    We were not equitably required to pay three times the property value to redeem this mortgage, unless it was *intentionally fettered* for that purpose. As it stands here, we are unjustly deprived of our share in the securitization scheme, where a "floating bond" is tethered to the home mortgage. It doesn't really matter how much is due, if payment is always supported by the underwriting value.


**WHEREFORE**, Plaintiffs as captioned above demand their "equities in redemption". The 'equity of redemption' is the mortgage fee, and therefore it is the title of possession in the mortgagor. May the Court grant all other relief due in law and in equity, and especially, in the several interests of justice. We are entitled to pay the real sale price and now redeem the mortgage.

## COUNT THREE:  VIOLATING THE CONN. FAIR DEBT
## COLLECTION PRACTICES ACT

**44.**     This Count relates to state law violations by BAC Home Loans Servicing, LP, & Bank of America, also through their agent law firm *"Bendett & McHugh"*, at C.G.S.A. § 36a-645 *et seq.*

**45.**     This mortgage has been "in default" since the year 2009, only meaning the schedule of payments stopped since that time. It does not mean there is any obligation to make these payments or that any holder of federally related mortgage debt in "default" is somehow distressed by this condition.

**46.**     Every federally related mortgage debt and all other debts issued in the commercial banking system are essentially "floating bonds", valued by the market daily. These assets are underwritten by either "Fannie Mae" or "Freddie Mac", held in receivership to the federal government by the defendant "FHFA".

**47.**     Under the CTFDCPA, C.G.S.A. § 36a-800 (3),

"Consumer collection agency" means any person (A) engaged as a third party in the business of collecting or receiving payment for others on any account, bill or other indebtedness from a consumer debtor, (B) engaged in the business of debt buying, or (C) engaged in the business of collecting or receiving tax payments, … "Consumer collection agency" includes persons who furnish collection systems carrying a name which simulates the name of a consumer collection agency and who supply forms or form letters to be used by the creditor, even though such forms direct the consumer debtor, property tax debtor or federal income tax debtor to make payments directly to the creditor rather than to such fictitious agency. "Consumer collection agency" further includes any person who, in attempting to collect or in collecting such person's own accounts or claims from a consumer debtor, uses a fictitious name or any name other than such person's own name which would indicate to the consumer debtor that a third person is collecting or attempting to collect such account or claim.

**48.**     Further, at C.G.S.A. § 36a-801 License required., it states,

"(a) No person shall act within this state as a consumer collection agency, directly or indirectly, unless such person has first obtained a required consumer collection agency license for such person's main office and for each branch office where such person's business is conducted. A consumer collection agency is acting within this state if it (1) has its place of business located within this state; (2) has its place of business located outside this state and (A) collects from consumer debtors, property tax debtors or federal income tax debtors who reside within this state for creditors who are located within this state, or (B) collects from consumer debtors, property tax debtors or federal income tax debtors who reside within this state for such consumer collection agency's own account..."

49.     On information and belief, defendant Bank of America is not licensed to collect debts in Connecticut, and BAC Home Loans Servicing, LP is acting as its agent in tandem with the foreclosure mill law firm Bendett &McHugh, for the purposes of collecting this mortgage debt claim via a foreclosure complaint.

50.     None of the defendants captioned above have ever "owned" or "held" this claim to mortgage debt, and the security of a "trust deed" does not make them "beneficiary" or "noteholder", but literally the opposite: a debt collector.

51.     The mortgage debt was plainly *monetized*, and essentially consists of the currency issued on the "battery" that is a realty mortgage in the commercial system. The mortgage debt is now legal tender, spendable but uncollectible.

        **WHEREFORE**, judgment is demanded against the responsible defendants in the amount of appropriate compensatory, consequential, actual and punitive damages. And to impose a constructive trust accounting for the plaintiff's rights in the securitization arrangement, granting all relief due in law and equity.

### COUNT FOUR: VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

52.     The foregoing paragraphs 1-52 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

53.     Defendants violated Section 809 of this Act by their failure to validate the alleged debt, and their failure to provide the name of the creditor to whom the debt is owed.

WHEREFORE, judgment is demanded against the responsible defendants in the amount of appropriate compensatory, consequential, actual and punitive damages. And to impose a constructive trust accounting for the plaintiff's rights in the securitization arrangement, granting all relief due in law and equity.

## COUNT FIVE: BREACH OF CONTRACT

54.     The foregoing paragraphs 1-54 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

55.     The mortgage servicing contract is an adhesion contract over which the Borrower has little control or influence. The Plaintiffs must rely on mortgage servicing to allow the payment plan to function, and to guarantee their rights in the equation.

56.     None of the defendants had any right or cause to docket an "Order of Foreclosure" against the plaintiff's mortgage interests, and were obliged under the adhesion of this "mortgage servicing contract" to first exhaust every other remedy. The federal defendant FHFA is underwriting an illegal policy.

57.     Either none of the defendants owned the mortgage debt or at least one of them failed to exhaust the plain remedy of exchange or presentment. To the extent the 'mortgage note' is a negotiable instrument or circulating value, the holder must spend, exchange, swap or present the chose in action, at the "place of payment" or into the related market.

58.     The federal government through its departments and agencies is underwriting a policy at the public expense and founded in the public power that encourages and subsidizes the other defendants' conduct.

14

59.     Every dollar "lost" under this contrary and perverse incentive is refunded under "80% Loss Sharing" while the "ORE" or "bank owned real estate" is listed by FDIC policy at "fair value" on the holder's books. See Exhibit "B" attached.

**WHEREFORE**, judgment is demanded against the responsible defendants in the amount of compensatory, consequential, actual and punitive damages. May the Court grant all relief due in law and equity, and recognize the mortgagor role and interest in the array of federal subsidy, regulation, financial securitization, and honor the demand for reorganization and redemption of the mortgage debt, subject to the "floating bond value" of the estate.

## COUNT SIX: BREACH OF WARRANTY

The foregoing paragraphs 1-60 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

60.     The warrant of fitness is both expressed and implied within the standard underlying residential mortgage contract. The Plaintiffs were entitled to a working product and a workable arrangement.

61.     The mortgage debt was meant to float on a securitization market. Therefore, it should have safeguards built in, to prevent unneeded or unlawful foreclosure activity such as within this fact pattern.

62.     If it was a contract for the payment of debt, it must have been founded on predatory lending appraisal fraud. Either the real property was charged under this mortgage for treble the real value, or it was meant to be rendered indefeasible as part of the larger collateralization swap.

63.     The mortgage debt was unpayable from the beginning, and lacked effective servicing, accounting, or accountability. Therefore the plaintiffs were entitled to the stability of a tradable securitization element through the same

"certificate shares series" that has been unlawfully used to prosecute the plaintiff as though it was an ordinary mortgage given to secure payment of a cash debt.

64.     This is a plea to impose and recognize the constructive trust, or to find a 'resulting trust' in the broad structure of this federally related financial and legal environment. If the federal government will underwrite this lending and investment scheme, we are entitled to "14th amendment relief" within the government sponsored welfare program.

     **WHEREFORE**, judgment is demanded against the responsible defendants in the amount of appropriate compensatory, consequential, actual and punitive damages. And to impose a constructive trust accounting for the plaintiff's rights in the securitization arrangement, granting all relief due in law and equity.

## COUNT SEVEN:  UNJUST ENRICHMENT AS A "MONELL CLAIM"

65.     The foregoing paragraphs 1-65 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

66.     The program and subsidy of the federal government in underwriting nationwide mortgage fraud, the massively wrongful use of foreclosure proceedings and widespread violations of statutory consumer protections besides other Acts of Congress designed to regulate markets and contractual relations amounts to an unconstitutional practice, law, policy and procedure.

67.     As none of the named defendants can prove ownership of plaintiff's alleged debt, any monies resulting from a foreclosure and sheriff's sale would constitute an unjust enrichment for any and all defendants.

68.     Further, it is likely that at least one of the defendants received the "80% loss sharing" refund pursuant to FDIC policy, therefore any monies awarded from a

foreclosure and sheriff's sale would constitute an unjust enrichment for that defendant.

   **WHEREFORE**, the plaintiffs seek relief against the defendant "Federal Housing Finance Agency" and all others similarly situated, noting the perverse role that the "FDIC" subsidies play in this chaotic and unruly atmosphere. May the Court grant all relief due in law and equity, beginning with honoring the plaintiff's interest in their equities and benefits within the federal subsidy, policy and programs. The federal government gave multiple trillions of dollars to the "foreclosure industry" that was meant to be used for stabilization yet it has only produced the unconstitutional fury of the "foreclosure mill machine".


### COUNT EIGHT: CLAIM FOR RECOUPMENT / TILA VIOLATIONS

69.    The foregoing paragraphs 1-69 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

70.    TILA requires that the actual lender be disclosed along with all compensation, profits, fees, commissions or anything else arising from the origination of the loan of money. No such disclosures were made to the Farinas at their closing, and the Plaintiffs demand recoupment under 15 U.S.C. 1640(e).

   **WHEREFORE**, this Court should offset the entire balance demanded by claiming right to receiver under TILA, RESPA, FDCPA etc. all undisclosed compensation that arose by virtue of the origination of the subject loan. Further, this is not barred by the statute of limitations, under a theory of "equitable recoupment".


### COUNT NINE: MAIL FRAUD

71.    The foregoing paragraphs 1-71 are hereby restated by reference as though set forth at length and in full, incorporating all allegations thereto.

72.     As an integral part of their illegal foreclosure scheme, BAC Home Loans
        Servicing LP through Bendett & McHugh LLP violated 18 U.S. Code § 1341
        "Frauds and Swindles" by using the U.S. mail system to send fraudulent
        documents to the plaintiffs over a ten year period.

73.     One example is the fraudulent assignment of mortgage dated July 22, 2009
        signed by Adam L. Bendett, a principal at the foreclosure mill law firm of
        Bendett & McHugh, posing as a vice-president of Mortgage Electronic
        Registration Systems, Inc. that was sent via U.S. mail to the plaintiffs multiple
        times over ten years.

74.     That fraudulent assignment was dated nearly one month AFTER the illegal
        foreclosure complaint was filed, meaning foreclosure Plaintiff BAC Home Loans
        Servicing LP had no standing to initiate its foreclosure activity on June 29, 2009.

        **WHEREFORE**, judgment is demanded against the responsible defendants
in the amount of compensatory, consequential, actual and punitive damages. May
the Court grant all relief due in law and equity

## VERIFICATION

The entirety of the foregoing Complaint is true, correct and complete within our
firsthand personal knowledge, information and belief, and we expect to prove it all at
trial on the merits by jury. All statements made therein are subject to the penalties of
perjury under related United States law and for the requirements to bring good faith
action in the federal courts, and in any court.

Richard Farina
3125 Lost Creek Drive
Cantonment, FL 32533
(860)-637-0725
email: skinsfan007700@yahoo.com

Linda Farina
3125 Lost Creek Drive
Cantonment, FL 32533
(860)-637-0725
email: skinsfan007700@yahoo.com